JOURNAL AND ENTRY OPINION
{¶ 1} Appellant Jonathan Tate ("Tate") appeals his conviction of aggravated robbery, in violation of R.C. 2911.01; and grand theft motor vehicle, in violation of R.C. 2913.02; both with firearm specifications. We find no merit to the appeal and affirm.
 {¶ 2} The facts, as adduced at Tate's jury trial, are as follows. On March 4, 2001, the victim, Eddie Joe Anderson, was driving his car at about three or four in the afternoon when he pulled over at a pay phone near the East 66th Street meat market to call his wife. Mr. Anderson got out of his car to make the call but left the car running. While using the phone, Anderson was surrounded by three young men.
 {¶ 3} Anderson testified that one of the men said he was taking Anderson's car and told Anderson to get in the car. According to Anderson, the man was standing about seven feet away from him. Anderson stated he was able to look at the man who was speaking and was able to look at his face.
 {¶ 4} When Anderson told the man that he was not getting in the car, the man pointed a gun at Anderson and said he would shoot him. Anderson described the gun as "an old sawed-off shotgun with the finish off of it down to the metal." Anderson also noted that the man was wearing a heavy jacket, that part of the gun was in the man's sleeve, and that the man held the gun in his right hand and pointed the barrel straight at Anderson's face.
 {¶ 5} Anderson stated that after he refused to get into the car and began backing away, the man with the shotgun said they were taking the car and got in behind the wheel. The other two men followed, and they drove off with the car.
 {¶ 6} Immediately following the incident Anderson called the police, and he filed a report the same day. A few days later, Anderson looked through mugshots at the Justice Center but did not see a picture of Tate.
 {¶ 7} Tate and the two other men were arrested within a few days of the incident at Randall Mall. The three men had driven to the mall in Tate's car. The police found that the men had Anderson's credit card and driver's license in their possession.
 {¶ 8} Thereafter, Anderson received a call from the North Randall Police Department and learned that his credit card and driver's license had been recovered. Anderson was then given the opportunity to look at a photo array containing six pictures and identified Tate as the gunman. Anderson was also able to identify one of the accomplices, Carlton Springer, whom he remembered as having small ears. While Anderson did see a photo that looked similar to the third offender, he did not pick him out because he did not want to make a mistake.
 {¶ 9} During the trial, Anderson also identified Tate as the person who had the sawed-off shotgun and stated he was sure of Tate's identification. The state also called Carlton Springer, who was serving a three-year sentence in connection with the crime. Springer testified that Tate had a gun in his sleeve that looked like a sawed-off shotgun. Springer further testified that Tate showed Anderson the barrel of the gun and said he wanted to borrow the car. Springer stated that after Tate displayed the gun, the three men got into the car and Tate drove them away. Springer indicated that they took Anderson's driver's license and credit card and disposed of other items in an area near Cedar Avenue. The three individuals were eventually picked up at Randall Mall by the North Randall Police Department. At the time of their arrest, the men had Anderson's credit card and driver's license in their possession.
 {¶ 10} In support of his defense, appellant called Anthony Holt, a lifelong friend, to testify. Holt admitted he was one of the three men picked up by the police at Randall Mall. Holt testified to a different version of the incident with Anderson. Holt claimed that he happened upon the scene and that Anderson and Springer were arguing at the pay phone. According to Holt, Springer was the one who was holding the gun and who drove the car away. Holt stated that he just walked away and went home.
 {¶ 11} On April 12, 2002, Tate was charged in a three-count indictment with aggravated robbery, in violation of R.C. 2911.01; grand theft motor vehicle, in violation of R.C. 2913.02; and theft, in violation of R.C. 2913.02. All counts contained one-year and three-year firearm specifications. Tate entered a plea of not guilty. The state dismissed the third count for theft, and the case proceeded to a jury trial on the remaining charges. The jury returned a guilty verdict on both charges, including firearm specifications. The court sentenced Tate to three years for the charge of aggravated robbery, three years for the firearm specification, to run consecutively, and one year for the charge of grand theft motor vehicle, to run concurrently, for a total of six years of incarceration.
 {¶ 12} Tate has appealed his conviction raising two assignments of error.
 {¶ 13} "I. The verdict was not supported by sufficient evidence and is against the manifest weight of the evidence."
 {¶ 14} The sufficiency of the evidence produced by the state and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 15} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 16} R.C. 2911.01, the aggravated robbery statute, prohibits the possession and display or use of a firearm while attempting or committing a theft offense. R.C. 2913.02, covering the grand theft motor vehicle charge, states in pertinent part: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (4) By threat; (5) By intimidation. (B)(1) Whoever violates this section is guilty of theft." The firearms specifications statute, R.C. 2941.145, requires the offender to have a firearm while committing the offense and to have displayed, brandished, indicated possession, or used the firearm.
 {¶ 17} The crux of appellant's claim here is that the evidence fails to establish that he was the gunman or that he brandished a firearm during the commission of the auto theft. As set forth above, Anderson testified that Tate was seven feet away from him, that he was able to look at Tate's face, that Tate pointed the barrel of a sawed-off shotgun at him, that Tate told him he was taking the car, and that he saw Tate enter the car behind the wheel and drive off in the car. Anderson also testified that he was sure of Tate's identification. Anderson's testimony was corroborated by Carlton Springer who also testified that Tate showed Anderson the barrel of the gun, said he wanted to borrow the car, and drove the three men away.
 {¶ 18} Appellant claims his witness, Anthony Holt, provided divergent testimony as to the identity of the perpetrator. While this court may consider the credibility of witnesses in reviewing the record as to the weight of the evidence, we give deference to the jurors' judgments since the jury had the opportunity to view the witnesses' testimony and adjudge their credibility.
 {¶ 19} Viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of the offenses beyond a reasonable doubt. Thus, Tate's conviction is sustained by sufficient evidence.
 {¶ 20} Further, after reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice such that Tate's conviction must be reversed and a new trial ordered.
 {¶ 21} Because Tate's convictions are supported by sufficient evidence and are not contrary to the manifest weight of evidence adduced at trial, appellant's first assignment of error is without merit.
 {¶ 22} "II. The trial court erred when it admitted testimony on the basis of unduly suggestive and unreliable eyewitness identification."
 {¶ 23} Appellant claims that the victim's identification of Tate took place more than a week after the incident and was based on an unduly suggestive photo array that contained only six photos, three of which were suspects and co-defendants in this case. Appellant argues these facts, coupled with Holt's eyewitness identification of Springer as the gunman, show the jury clearly lost its way in resolving evidentiary conflicts with the victim's eyewitness testimony.
 {¶ 24} This court has held that even presuming a pretrial identification procedure is impermissibly suggestive, an in-court identification is permissible where the prosecution establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime. In re Henderson (Feb. 7, 2002), Cuyahoga App. No. 79716, 2002-Ohio-483. When a witness has been confronted with a suspect before trial, a court is not required to suppress an identification of the suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. Id. Moreover, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id.
 {¶ 25} In order to determine the reliability of the identification, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. Id.
 {¶ 26} Applying the reliability test, we note that during the incident, Anderson had a clear view of Tate. Anderson testified that he looked at the man who pointed the gun at him, he spoke to the man, and he observed the man when he entered the car behind the wheel. Nothing in his testimony suggests a lack of attentiveness during the incident. Although over a week had passed between the crime and the time of identification, Anderson stated he was sure of Tate's identification. On balance, we find Anderson had a reliable independent basis for the identification based on his observations made at the scene of the crime. There was no substantial likelihood of misidentification.
 {¶ 27} Because Tate failed to demonstrate the unreliability of the identification, we conclude that the trial court did not err by admitting the photo identification or the in-court identification of Tate. Accordingly, we reject this assignment of error.
Judgment affirmed.
ANN DYKE, P.J., and TIMOTHY E. MCMONAGLE, J., concur.